| | | |
|---|---|---|
| PATRICIA KEECH and DAVID NEWFIELD, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Case No.: 18-cv-00683-JRT-HB |
| | ) | |
| vs. | ) | |
| | ) | |
| SANIMAX USA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

## INTRODUCTION

Following this Court's February 3rd entry of an Order Preliminarily Approving this Class Action Settlement, Notice was dispatched to 10,395 addresses and the response from the Class is overwhelmingly positive. A mere seven (7) households chose to opt out of the Settlement and even fewer chose to file objections. The three objections that were filed are based on a complete misunderstanding of the factual and legal issues at the heart of this case. Two of the three Objections were filed by the City of Newport and its mayor, Dan Lund; the third Objector appears to have ties with Mr. Lund. Since the three Objections are based on an incorrect understanding of the terms of the Settlement, they should be overruled and the Settlement approved.

A final approval from this Court will allow Class Members who completed a claim form to receive their portion of the settlement fund and allow Sanimax to begin the process

of implementing the agreed-upon improvement measures that will benefit the entire Class. Accordingly, Plaintiffs, with the emphatic support of their Class, seek entry of a Final Order approving the Class Action Settlement, Certification of the Settlement Class and Appointing Class Representative and Class Counsel.

## PROCEDURAL BACKGROUND

This action stems from Plaintiffs' allegations that Defendant Sanimax USA LLC's ("Defendant") rendering facility ("Facility") emitted noxious odors into Plaintiffs' property. This case has been pending since March 12, 2018. Defendant denies each of the claims alleged in Plaintiffs' complaint and raised certain defenses that, if sustained by the Court, may minimize or defeat any recovery for the Class. After extensive, arms-length negotiation between the parties, including a day-long mediation with independent facilitator, the parties reached a mutually agreeable settlement that will avoid further litigation and provide immediate, substantial relief to Plaintiffs and the Class. Experienced Counsel for both sides agree that based on the record and this Court's rulings to date, this settlement represents a fair, reasonable, and adequate resolution of Plaintiffs' claims.

Before and after initiating the litigation, Plaintiffs, through Counsel, conducted an extensive investigation of Defendant's facility and the odor problem alleged in the complaint. The investigation included the request, receipt, and review of large volumes of documents from the City of Newport, the Minnesota Pollution Control Agency, and the City of South St. Paul. The pre-suit investigation further included receipt and review of numerous data sheets provided to Plaintiffs' Counsel by members of the Class who attributed noxious odors to Defendant's Facility. Such information provided Plaintiffs and

their experienced counsel with an adequate foundation to assess the likelihood of prevailing on issues of class certification, merits, and damages.

On May 18, 2018, in lieu of filing an answer to Plaintiffs' complaint, Defendants filed a Motion to Strike Plaintiffs' Class Allegations. Following submission of the parties' motion papers, the Court conducted a hearing on the motion on October 22, 2018. While the court denied the motion, it expressly stated that "it seems unlikely that the Plaintiffs will be able to prove their nuisance claim on a class-wide basis..." [R. 40, pg. 5 of 11]. The Court held that "[w]hile Plaintiffs' claims may ultimately be unsuitable for class-wide resolution, the Court will not use its discretion to take the disfavored action of striking class allegations at this time." [*Id.* at 11].

After Plaintiffs' claims survived the motion, the parties had frank discussions regarding the value of the case and determined that it would be productive to continue settlement discussions with a neutral mediator. The parties convened on April 22, 2019 and were able to reach an agreement in principle following a day-long mediation.

On February 3, 2020, this Court granted preliminary approval of the Settlement Agreement and the associated documents. [R. 85]. Through its Order, the Court conditionally certified the class and ordered that notice be provided to the putative Settlement Class. The conditionally certified class was defined as follows:

> *All current or former owners or occupiers of residential property located within a two mile radius of Defendant's facility at 505 Hardiman Avenue, South Saint Paul, Minnesota, and all owners or occupiers of residential property outside of that radius who submitted a residential data sheet to Class Counsel on or before July 15, 2019 concerning odors or emissions from South St. Paul.*

The Court further approved the method and means of serving notice, in addition to the Class Notice Form, Claim Form, and detailed instructions for putative class members to object to, or opt-out of the proposed settlement. The Class Notice was sent, as ordered by the Court, by first class mail. Class Counsel posted all documents related to the Settlement Agreement, including the Notice, Claim Form, Settlement Agreement and the Map depicting the Class Area on Class Counsel's website. Along with Notices, Class Members were provided a Claim Form to seek compensation from the Settlement Fund and instructions for opting out of or objecting to the settlement. Class Members were given 45 days to opt out or object to the Settlement Agreement. Any Class Member who elected to opt out will not be bound by the Settlement Agreement and will not release any claims against Defendant.

In accordance with the Court's order, Plaintiffs, through their experienced counsel, effectuated the Notice to the Class. The reaction of the Class has been overwhelmingly positive. To date, more than 1,500 Class Members have submitted Claim Forms. Only a small minority of putative class members elected to opt-out, seven (7) in total (less than 1% of the Class). (**Ex. 1**, Opt-Outs).[1] Only 3 objections were filed. (**Ex. 2**, Objections). All three of the objections erroneously complain that the Settlement provides insufficient injunctive relief based on a misunderstanding of the Settlement Agreement and the factual and legal underpinnings of the case.

---

[1] All Exhibits referenced herein are attached to the May 11, 2020 Declaration of Jeffrey S. Storms, which is filed herewith.

The overwhelmingly positive response from the putative class is not surprising, as the Settlement Agreement provides substantial and immediate benefits for the Class, including both monetary compensation and improvement measures. (ECF No. 63-1, Settlement Agreement ¶¶ 5, 6). The Settlement Agreement requires Defendant to pay $750,000 into a Qualified Settlement Fund (QSF) for the immediate benefit of the Class Members. (Settlement Agreement ¶ 5). After the deduction of such attorney fees, costs/expenses, and service awards to class representatives as the Court may grant, the fund will be distributed on a *pro rata* basis to all Class Member households that timely submitted approved Claim Forms. Importantly, the Settlement Agreement also requires Defendant to implement at least $450,000 worth of improvement measures to the Facility in order to reduce odorous air emissions. (Settlement Agreement ¶ 6). The specific expenditures include multiple emission reduction projects, including "a new venturi/scrubber," which is a vital emission control device. (Settlement Agreement ¶ 6).

The $450,000 in remedial measures are expected to reduce the air emissions alleged in the Complaint. Based on Class Counsel's extensive experience and knowledge through investigating, litigating, and negotiating industrial air emission claims, the remedial measures provided through the Settlement are fair, adequate, and reasonable.

The three meritless objections by the City of Newport, its Mayor Daniel Lund, and resident Steven Bern ("Objectors"), who appears to be affiliated with Mr. Lund, are duplicitous of one another and should be uniformly overruled. (**Ex. 2**; *see also* **Ex. 3**.) The Objectors' concerns relate to: (1) lack of a public admission by Defendant; (2) inadequate monetary investment in improvements; (3) the length of the implementation period for

5

improvement measures; and (4) a desire for increased oversight of the improvement measures.

The Objectors' issues with the Settlement Agreement are without merit. First, Newport and Lund go to great lengths in their objections to emphasize that, in their opinion, odors from Sanimax have negatively impacted Newport and its residents for decades. Yet, despite being such an egregious problem, neither the City nor its mayor, or his predecessors, have ever done anything to address the issue at any point before or during this lawsuit. In fact, it is Class Counsel's belief that Newport has never once tried to reach out to Sanimax to address its emissions. Nor did Newport reach out to Class Counsel at any point in the year and a half of the pendency of this lawsuit to offer assistance or any input into this case whatsoever. Instead, Newport waited until a settlement was before this Court to indicate its dissatisfaction its terms.

However, the Objectors criticisms of the Settlement Agreement are indicative of their relative inexperience litigating environmental nuisance claims. Class Counsel has litigated more than 50 similarly-styled class actions over the past 20 years. Based on this experience, and a familiarity with the facts of this case including the proximity of other facilities in the area that have the potential to emit odors, and the relevant law, Class Counsel determined that the proposed settlement was in the best interest of the proposed class.

While Plaintiffs and Class Counsel maintain a common interest in ensuring that Sanimax's alleged odor problem is remediated once and for all, the Objectors fail to understand and/or consider the very real legal, factual, and practical barriers that stand in

the way of obtaining the commonly sought remedial measures through prolonged motion practice and eventual trial on the merits—perhaps on an individualized basis depending on this Court's prospective ruling on class certification.

The Objectors' issues with the improvement measures and the timeline for implementing them is unfounded. Contrary to the Objectors' assertions, there is no guarantee that requiring additional funds aimed at improvement measures will alleviate any emission of off-site odors. Indeed, they note that Sanimax has already invested millions in odor abatement, so they believe that another $450,000 will not help the problem. This rationale has no basis as the Objectors have no real understanding of what Sanimax has done in the past to abate odors, nor do they make any substantive arguments about the future improvement measures dictated by the Settlement Agreement. Contrary to the Objectors' unsupported *belief*, experience indicates that the improvement measures that Sanimax plans to implement are expected to significantly contribute to abating any emission of off-site odors.

The Objectors criticisms of the timeline for the implementation of the improvement measures are equally without merit. This is especially true when the Objectors have failed to evidence a complete understanding of what improvement measures will occur. They certainly are not in a position to concoct deadlines that are impossible to meet. Sanimax has provided detailed explanations to Class Counsel and the Court as to why the agreed-upon timeline is realistic.

Finally, the Objectors suggest that the Court should appoint a Special Master to enforce the terms of the Settlement Agreement. This is wholly unnecessary. Sanimax is

already required by the terms of the Settlement Agreement to provide Class Counsel with status reports relating to the implementation of the improvement measures. This has been a standard procedure in many of Class Counsel's past settlements and it has proven to be very effective.

The Objectors fail to understand that, even presuming that Plaintiffs could prevail on proving their case, doing so would take several years and could very likely not include obtaining improvement measures as part of their relief. Further, the Objectors fail to understand that Plaintiffs faced an extremely onerous task of proving their case. Defendants have raised numerous, potentially meritorious defenses, to Plaintiffs' claims, including numerous additional potential odor polluters who Defendant claims are the cause-in-fact of the alleged odors. Further, this Court expressly stated its preliminary belief that "it seems unlikely that the Plaintiffs will be able to prove their nuisance claim on a class-wide basis[.]" These factual and legal circumstances threaten to diminish, or entirely eliminate, any monetary or injunctive recovery for Plaintiffs' and the Class. If class certification were denied, Plaintiffs and the Class would be required to file hundreds of separate, individual claims that would be a virtual death knell to any remedial relief from Sanimax, as individual claims are highly unlikely to result in any injunctive relief at all. Further, resort to hundreds of separate individual claims would likely substantially decrease the amount monetary relief that is provided through this Settlement and almost certainly result in no monetary recovery for the vast majority of claimants for whom this Settlement currently benefits.

Newport's objections are completely at odds to the wishes of its residents. Notice of the Settlement was sent to 1,565 households in the City of Newport. Of the 7 opt outs filed in this case, only one came from the City of Newport; by a limited liability corporation that owns a residential housing complex in the city; not from an individual resident. Further, Newport residents constitute less than 2% of the Class. It would be patently unfair to the Class if Newport and its mayor are able to derail this settlement. Finally, and significantly, the City of South St. Paul, where the majority of Class Members reside, chose to file an Opt Out in this case rather than voicing any Objections to the Settlement. (**Ex. 1**).

The proposed Settlement is fair, adequate, and reasonable to both (1) compensate Plaintiffs and the putative class for the legally cognizable damages they suffered and (2) take substantial steps to remediate the odor problem moving forward. The Objections—which erroneously pretend that years of protracted litigation will somehow yield a better, more efficient result—are blind to the legal and factual realities of the case and should be overruled. For the following reasons, the Court should grant final approval of the Class Action Settlement.

## ARGUMENT

## I. CLASS CERTIFICATION REMAINS APPROPRIATE

Plaintiffs move to certify a class for settlement purposes only pursuant to FRCP 23(a). In the Preliminary Approval Order, the Court held that conditional certification of the Class was appropriate under Rule 23. [R. 85, ¶ 5]. The prerequisites for class certification under Rule 23(a) are that (1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately assert and protect the interests of the class. FRCP 23(a). Finally, FRCP 23(b) provides that class certification is appropriate where one of three circumstances indicate that the class action mechanism is a superior, or otherwise important, mechanism for resolving the dispute.

Plaintiffs submit that nothing has changed since preliminary approval that would impact the Court's preliminary findings that certification of the Class and appointment of Class Counsel and Class Representative are appropriate for the purpose of settlement. Notice has been delivered to the Class as directed by the Court, the response has been overwhelmingly positive, and Plaintiffs now request that the Court enter the proposed Order granting final approval so that the Settlement can be effectuated.

## II.   FINAL APPROVAL OF THE PROPOSED CLASS SETTLEMENT IS WARRANTED BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE TO PLAINTIFFS AND THE CLASS.

"A settlement agreement is presumptively valid." *Ortega v. Uponor, Inc. (In re Uponor, Inc.)*, 716 F.3d 1057, 1063 (8th Cir. 2013) (internal quotation and marks omitted). It is well-established that there is a "strong public policy favoring the settlement" of disputed claims without extended litigation. *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007) (quoting *Hentschel v. Smith*, 153 N.W.2d 199, 204 (Minn. 1967)). Class actions are particularly amenable to settlement because of the complexities of proof and the typical length, costs, and risks of litigation. *See In re Zurn Pex Plumbing Products Liability Litigation*, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013); *see also Class Plaintiffs v.*

*City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (stating that judicial policy favors settlement especially here complex class action litigation is concerned). Accordingly, "[t]he court's role in reviewing a negotiated class settlement is to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall v. NFL*, 787 F.3d 502, 509 (8th Cir. 2015) (internal quotation omitted).

In determining whether the settlement is fair, adequate, and reasonable under the circumstances, the Court must consider: "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. NFL*, 787 F.3d 502, 508 (8th Cir. 2015). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

### A. The Settlement Is Entitled to a Presumption of Fairness Because it Was Reached Through Arms' Length Bargaining that Was Free of Fraud or Collusion, including through a Neutral Mediator.

Here, the settlement is entitled to a presumption of fairness because the settlement was reached following extended and deliberate arm's length bargaining by experienced counsel with sufficient information, knowledge, and experience to negotiate intelligently regarding Plaintiffs' claims on behalf of the Class. This case was vigorously litigated for two years by experienced counsel. Plaintiffs' counsel, Liddle & Dubin, P.C. has

successfully litigated and negotiated dozens of class action settlements involving similar claims relating to air pollution and noxious odors, spanning decades.

Both before and after initiating the litigation, Plaintiffs, through Counsel, conducted an extensive investigation of Defendant's facility and the odor problem alleged in the complaint. The parties fiercely litigated Defendant's Motion to Strike Class Plaintiffs' Class Allegations, and then engaged in frank discussions that resulted in the decision to discuss settlement through a neutral mediator. Following a full day of mediation with independent facilitator William Baten, the parties made substantial progress towards a resolution and agreed to continue working towards settlement. Following continued discussions between counsel, this Settlement was reached. Following class notice, a remarkably small number of opt-outs and objections were received from a class consisting of thousands of households. Accordingly, this Settlement is entitled to a presumption of fairness.

### B. The Settlement is Fair Weighing the Merits of Plaintiffs' Case against the Terms of the Settlement.

Plaintiffs and their counsel believe that they and the Class have an excellent case that is reflected in the agreed upon resolution. The Settlement Agreement provides for $750,000 in monetary relief and $450,000 in improvement measures that are expected to curb odor emissions. This is an excellent result for the Class in terms of both direct economic benefit and nonmonetary relief that is comparable to results obtained in similar litigation, particularly one involving a highly industrial area where odors may be arguably attributable to numerous sources other than Defendant.

After the deduction of such attorneys' fees, costs/expenses, and incentive awards as the Court may grant, the settlement fund will be distributed on a *pro rata* basis to all Class Member households that have timely submitted approved Claim Forms. The improvement measures at Defendant's facility will include the installation of a new venturi/scrubber, which is integral to adequate odor emission control, among other odor mitigating projects to which Defendant has committed to undertake.

Defendant aggressively opposed, and absent this Settlement would continue to oppose, class certification, liability, and damages. A loss in any of these three aspects of the case would likely serve as the death knell for most or all of the claims of the Class. While Plaintiffs continue to believe that class certification would have been appropriate in this case, Plaintiffs also recognize that class certification is anything but certain. *See Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287 (W.D. Ky. 2008); *see also Cochran v. Oxy Vinyls LP*, No. 3:06CV-364-H, 2008 WL 4146383 (W.D. Ky. Sept 2, 2008). Therefore, Plaintiffs recognize that they faced significant risk in obtaining class certification. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Further, even where certification is granted, the possibility of appeal and/or decertification remain, which could threaten to significantly delay the litigation to a point at which success in a trial on the merits could be substantially inhibited.

Even if Plaintiffs were able to obtain class certification, they would have to affirmatively establish through expert and lay testimony that the spread of Defendant's emissions and that those emissions were of such frequency, intensity, and duration to constitute a nuisance. Defendant would certainly point to several other area facilities as

13

possible sources of the odors that the Class would testify to, and challenge, every aspect of Plaintiffs' proof of Defendant's emissions. This would involve competing scientific testimony of sufficient complexity that the ultimate outcome would be anything but certain, even if permitted to go to trial.

Further, Defendant would likely oppose Plaintiffs' evidence on damages. Determining the damages attributable to a nuisance requires that those damages be isolated from numerous other factors that impact value. One can be sure that Defendant would have offered evidence of countless other factors, real or hypothetical, claiming that much or all of any loss in value claimed to be attributable to Defendant's facility was actually caused by other non-environmental factors, as opposed to its own air pollutants and noxious emissions. After considering the range of possibilities, it is Class Counsel's experienced and well-researched opinion that, given the potential risks, rewards and costs of continuing litigation, the Settlement on the proposed terms is the most advantageous option for Plaintiffs and the Class to take. The risks attendant to complex class litigation counsel in favor of approving the Settlement Agreement, which is well within the range of reasonableness for the Court to honor the mutually negotiated settlement.

Based on Class Counsel's vast experience litigating and negotiating similar claims and settlements, this compensation is eminently fair, adequate, and reasonable in light of the factual circumstances of this case and the costs and risks associated with protracted litigation of class claims of this nature. The Settlement provides substantial monetary and injunctive benefits for the Class and does not release claims based on future conduct of Defendant or claims. The Settlement also does not release claims for personal injury or

diagnosed medical harm, providing further incentive for Defendant to refrain from impacting its neighbors. The Settlement Agreement does not in any way restrict Class Members' ability to speak or complain about Defendants' operation, and it does not inhibit the rights of individuals who chose to opt-out to pursue claims on their own.

The Settlement is fair, reasonable, and adequate considering the strength of Plaintiffs' case weighed against the monetary and injunctive relief obtained.

### C. The Overwhelmingly Positive Response from the Class Demonstrates that the Settlement is Fair, Reasonable, and Adequate.

This is an excellent result for an odor nuisance case, as further demonstrated by the informed views of Class Counsel and the overwhelmingly positive response from the Class. Only 3 objections to the Settlement were submitted, and only 7 putative class members chose to opt-out. The scarcity of objections is further evidence of the Settlement's fairness.

The objections essentially amount to political posturing by the City of Newport and its Mayor, Dan Lund. The crux of the objections is that the hard-fought improvement measures obtained through the Settlement do not go far enough. However, this provides no basis for the Court to determine that the Settlement is somehow not fair, adequate, or reasonable under FRCP 23. Plaintiffs' claims on behalf of the Class sought damages for harm done to residential properties situated within the Class Area. The Settlement achieves that objective through $750,000 in monetary damages, and the objections fail to even challenge the adequacy of the monetary damages obtained. The objections only relate to the extent and oversight of injunctive relief obtained, including unsubstantiated fears that Defendant will try to evade its obligations under the agreement. However, that Plaintiffs

were able to successfully negotiate $450,000 in improvement measures, including the installation of a new venturi/scrubber, that will directly impact the Facility's odor emission and control capacity, and benefit all surrounding communities, demonstrates that the scant objections lack merit.

The Objections are little more than an argument that the perfect should be the enemy of the good, which is no basis for rejecting the mutually-negotiated settlement. Objector's position, however, would provide residential property owners, like Plaintiffs and the Class with no recourse, or at best at least delay their ability, to obtain the monetary damages for harm to individual residential properties, which this Settlement provides.

The fact is that Plaintiffs' counsel has received more than 1,500 claim forms, with only 3 objections, and 7 opt-outs. This is an extraordinarily positive response to class settlements, which almost always involve a substantially higher number of objections and opt-outs. This is particularly noteworthy because, in Class Counsel's experience, the opt out and objection period is typically 30 days and the deadline for filing claims is 45 days. In this case, as the Court knows, Class Members were afforded 45 days to opt out or object to the Settlement and 60 days to file a Claim. Based on the overwhelmingly positive response from the community, and the miniscule number of objections and opt-outs, the Settlement Agreement clearly merits final approval.

    **D. The Settlement is Fair, Reasonable, and Adequate Given the Complexity, Expense, and Risk Associated with Proving Class Certification, Liability, and Damages in An Environmental Class Action.**

This case was filed on March 12, 2018, and, absent this resolution the parties, this case would continue to be fiercely litigated on numerous issues that would surely take years to resolve. Continued litigation of this complex matter is likely to drag on with Class Members receiving no relief while having any eventual award diminished by the related costs, including costly and complex expert testimony. The Settlement Agreement avoids the risk, complexity, time, and cost of further litigation, and provides the Class with guaranteed monetary and non-monetary relief on an immediate basis. The implementation of the substantial improvement measures at the Facility makes this factor even more important than it might otherwise be because progress can begin immediately to remedy the underlying cause of the problem. Every day this litigation drags on is yet another day that the Class does not benefit from the improvement measures, and their effect on the Facility's emissions.

Now the Class will obtain relief, as opposed to waiting years for an uncertain outcome which would in any event be diminished by the costs of protracted litigation. This is a particularly important consideration where the relief is not merely monetary, but also consists of real improvements to Defendant's facility that will boost Class Members' quality of life. The Settlement is fair, adequate, and reasonable in light of all the attendant risks of litigation. *See* William B. Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* § 11:50 at 155 (4th ed. 2002) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results"); *Ashley v. Atl. Richfield Co.,* 794 F.2d 128, 134 n.9 (3d Cir. 1986) ("Physical, psychological and monetary benefits inure to both sides

of a settlement agreement. Indeed, the avoidance of litigation expense and delay is precisely what settlement contemplates").

"The very purpose of compromise is to avoid the delay and expense of such a trial." *Grunin v. International House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975). Where, as here, Class Counsel and Defendant have reached a settlement regarding a vigorously disputed matter, the Court "need not resolve all of the underlying disputes, *see* 513 F.2d at 123, and the value of the settlement need not be determined with absolute precision." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). The question is not whether the best possible recovery has been achieved but whether, in view of the stage of the proceedings, complexity, expense and likely duration of further litigation, as well as the risks of litigation, the settlement is fair, adequate, and reasonable. The proposed Settlement is the best vehicle for Settlement Class Members to receive substantial relief in a prompt and efficient manner.

### E. The Proposed Attorneys' Fees and Reimbursement of Costs Expended Are Reasonable and Should be Approved.

As a class action, FRCP 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." "A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The class notice previously approved by this Court [R. 85] clearly stated that "Class Counsel has prosecuted this case

on a contingent basis. At the Settlement Fairness Hearing, Class Counsel will be seeking the approval of the Settlement Agreement and requesting the Court for an award of attorneys' fees, costs and expenses up to, but not to exceed $300,000 from the Settlement Fund." Notice of this request for attorneys' fees and costs past provided and mailed to the class and published on Class Counsel's website. No objection was filed to Plaintiffs' requested attorneys' fees by any member of the Class, which is an important factor to be considered by the Court evaluating the request. *See In re U.S. Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

The Settlement provides a total benefit to the Class in the amount of $1,200,000, and Plaintiffs' Counsel worked exclusively on a contingent fee throughout this litigation. (**Ex. 4**.) Plaintiffs request that the Court order an award of (1) attorneys' fees to Class Counsel in the amount of $272,258.96 ($217,807.17 to Liddle & Dubin, P.C. and $54,451.79 to Newmark Storms Dworak LLC), which reflects an attorneys' fee of approximately 23% of the total value of the Settlement; (2) reimbursement of litigation expenses to Liddle & Dubin, P.C. in the amount of $27,741.04 (**Ex. 5**); and (3) a service award to Class Representatives Patricia Keech and David Newfield in the amount of $1,500 each for their efforts in furtherance of the interests of the Class.

Under the Settlement Agreement, the Parties agreed that Class Counsel "will move the Court (i) for an award for Class Counsel of attorneys' fees and reimbursement of costs and expenses in an amount not to exceed $300,000[.]" (Settlement Agreement ¶ 3(d)). The amount requested in attorneys' fees amounts to approximately 23% of the total value of the settlement. With fees the amount requested amounts to approximately 25%. It is not

only accepted, but "well established" in Eight Circuit class action jurisprudence "that a district court may use the 'percentage of fund' methodology to evaluate attorney fees in a common-fund settlement." *9-M Corp., Inc. v. Spring Communications Co. L.P.*, No. 11-3401 (DWF/JSM), 2012 WL 5495905, at *2 (D. Minn. Nov. 12, 2012) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)). Attorneys' fees awards between 25% and 36% of a common fund are routinely approved by this Court. *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (collecting cases).

The requested attorneys' fees of $272,258.96 and $27,741.04 in costs expended are reasonable and should be granted. Class Counsel worked exclusively on a contingent fee basis on behalf of Plaintiffs and carried all of the costs and all of the risk associated with the litigation from the beginning, taking on tens of thousands of dollars of actual expenses on behalf of the Class in a case that could have resulted in no recovery. To date, Counsel has not received any payment for their extensive services in investigating, prosecuting, and negotiating a highly beneficial settlement, nor have they been reimbursed for their substantial out-of-pocket expenses. The percentage of this total common fund is the best method for apportioning the attorneys' fee based on the type of litigation and the roles and expectations of the parties entering litigation.

The amount requested by Plaintiffs in attorneys' fees and costs is eminently reasonable given the size of the fund and the number of persons benefitted by the Settlement. Complex environmental tort litigation of this type begins with two primary

goals for the neighborhoods affected by noxious odors and air particulates: (1) compensate residents for the damages caused and (2) fix the nuisance so it no longer interferes with the residents' right to freely use and enjoy their property. This highly beneficial settlement squarely achieves both goals. The value of the Settlement will be enjoyed by thousands of neighboring residents because the odors will be minimized or eliminated. The value of the monetary compensation will compensate all those who submitted Claim Forms. Accordingly, the size of the fund and the number of people benefitted supports the requested fees and costs.

The overwhelming majority of Class Members demonstrated support for the Settlement, very few opted out, and only a miniscule minority submitted an objection. No class members objected to the amount of the requested attorneys' fees. Following notice that went out to thousands, the Settlement received only three objections—two of which were motivated by an inaccurate understanding of the Settlement Agreement and the relief it affords Class Members. (**Ex. 2**, Objections). The response from the Class overwhelmingly supports the requested attorney's fees.

Further, the firm of Liddle & Dubin, P.C. has vast experience litigating mass environmental tort claims against industrial air polluters. Counsel has successfully litigated and resolved dozens of claims under similar legal theories to those at issue here. For that reason, and because of its extensive investigation, Counsel was able to efficiently and accurately evaluate the value of Plaintiffs' claims and to effectively communicate with Defendant regarding the highly technical causes of the damages Plaintiffs suffered. While Counsel dedicated hundreds of hours and substantial financial resources into investigating

Plaintiffs' claims and advancing Plaintiffs' litigation positions, including a hotly contested motion to strike the class allegations and daylong mediation, it was able to effectively reach a comprehensive and beneficial Settlement on behalf of the Class without delaying the much needed relief—both remedial and compensatory—that will result from this Settlement.

Additionally, the firm of Newmark Storms Dworak LLC ("NSD") invested significant time and energy into communicating with prospective class members and coming to contingency fee agreements with the class representatives. NSD also provided guidance relative to Minnesota and 8th Circuit law, and expended significant time ensuring that Plaintiffs' pleadings and filings conformed to local practice. NSD was active in its local counsel role, contributed to the success of these proceedings, and should receive the requested payment for its services.

Counsel worked efficiently to maximize the recovery for the Class, while limiting expenses that would diminish the class recovery and maximizing the improvement measures obtained by the Class and the community-at-large. "[O]ne of the primary advantages of the percentage of recovery method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005). The Class benefitted from Counsel's knowledgeable and efficient efforts and expertise in this type of complex litigation, and the resulting efficiencies that benefitted the Class weighs heavily in favor of the requested fees and costs.

Further, the highly technical nature of this case and the comprehensive and creative relief sought and obtained through the Settlement made negotiations lengthier and more complex than the typical battle over dollars, cents, and the scope of the release. Due to Counsel's knowledge and experience litigating against industrial air polluters, the Class was able to obtain much needed remedial relief in the form of a new venturi/scrubber that will directly reduce air emissions moving forward. Without Counsel's experience, investigation, and vigorous advocacy, individual recoveries would have been unlikely, if not impossible, and the total recovery, including remedial measures, would never have inured to the benefit of the Class and the community as a whole.

The attorneys' fees are reasonable based on fees awarded in similar class actions, and they should be granted.

> **F. $1,500 service awards to Class Representatives Patricia Keech and David Newfield for Their Efforts in Representation of the Class Should be Granted.**

Plaintiffs finally request that the Court grant a service award of $1,500 each to Class Representatives Patricia Keech and David Newfield for each of their efforts in representing the Class. "Courts have recognized the propriety of such awards, for without a named plaintiff there can be no class action, and hence serving in that capacity confers a benefit on the (other) beneficiaries of the common fund." *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 951 (D. Minn. 2016) (quotations and marks omitted). The power to grant such an award firmly within the discretion of the trial court. *See Koenig v. United States Bank N.A. (in Re United States Bancorp Litig.)*, 291 F.3d 1035, 1038 (8th Cir. 2002). Such awards are routinely granted in class actions to reward individuals who represent, and

successfully vindicate, the rights of the Class. Plaintiffs here have devoted substantial time and energy into obtaining this outstanding settlement from the Class, and they should be compensated for their efforts.

## CONCLUSION

As demonstrated by the arm's length nature of negotiations, the benefits to the class in light of the cost, risk, and delay of continued litigation, the reaction of the Class, and the immediate benefits the agreement will provide to the Class, the Settlement Agreement is fair, adequate, and reasonable and should be finally approved. Further, the requested attorneys' fees, costs, and Class Representative service awards are reasonable and should be granted. Plaintiffs therefore respectfully request that the Court enter the attached proposed Order finally certifying the Settlement Class, granting final approval, and providing for the associated relief necessary to facilitate the Settlement Agreement.


Dated: May 11, 2020

Respectfully submitted,

LIDDLE & DUBIN, P.C.

s/ Laura L. Sheets
Steven D. Liddle (P45110) (admitted pro hac vice)
Laura L. Sheets (P63270) (admitted pro hac vice)
975 East Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015
Fax: (313) 392-0025
SLiddle@mldclassaction.com
LSheets@mldclassaction.com

**NEWMARK STORMS LAW OFFICE LLC**

*/s/ Jeffrey S. Storms*
Jeffrey S. Storms (#0387240)
100 South Fifth St., Suite 2100
Minneapolis, MN 55402
Telephone: (612) 455-7050
Fax: (612) 455-7051
jeff@newmarkstorms.com

*Attorneys for Named Plaintiffs*